UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BARRY BAKER                                CIVIL ACTION NO. 10-cv-0044

VERSUS                                     JUDGE STAGG

WARDEN, WINN CORRECTIONAL                  MAGISTRATE JUDGE HORNSBY
CENTER

## REPORT AND RECOMMENDATION

### Introduction

A Bienville Parish jury convicted Barry Baker ("Petitioner") of second degree murder in connection with the shooting death of his wife, Melanie Baker. He challenged the sufficiency of the evidence on direct appeal. State v. Baker, 962 So.2d 1198 (La. App. 2d Cir. 2007), writ denied, 978 So. 2d 363 (La. 2008). He then filed a state post-conviction application and complained that he could not get a free copy of the trial transcript and had received ineffective assistance of counsel. He now seeks federal habeas relief on these three grounds. For the reasons that follow, it is recommended that the petition be denied.

### Sufficiency of the Evidence

Petitioner and Melanie were not divorced but had an on-and-off relationship, with Petitioner often staying with his aunt, Sarah Baker. During one of those periods of separation, Petitioner and his friend Darmekus Clark left Gibsland in Ms. Baker's borrowed car. Darmekus said Petitioner told him they were going to the Baker couple's home in Athens to get Petitioner some work clothes and see his wife. Melanie was not home. The men drove

on to Homer and, along the way, saw Melanie's car broken down on the side of the road. They returned to Gibsland and went to Melanie's mother's home, but Melanie was not there.

At the same time, Melanie was driving around the Gibsland area in a maroon Mustang that she borrowed from Paul Kingsby.  In the car with her was her 6-year-old son, Matthew, cousin Tanisha, and friend Toria.  The three women were just riding around and smoking marijuana to kill some time. They encountered Petitioner at an intersection.

Petitioner recognized his wife and began to follow the Mustang.  One passenger testified that Petitioner was driving fast and following them closely.  Melanie stopped near an intersection after a tire got stuck in a pothole or similar obstruction.  Petitioner drove around the Mustang and blocked it by parking diagonally in front of it.  Tanisha testified that she grabbed a .25 caliber pistol that was between the front seats of the car, and she ran to a nearby vacant house.  Toria also ran to the house, but Matthew stood at the open passenger door.

Petitioner got out of his car and cocked his pistol as he walked to the driver's door of the Mustang.  Matthew begged Petitioner not to kill his mother, but Petitioner told Melanie that he had told her about playing games with him and that he was going to kill her.  He then shot her twice, in the head and chest.  Petitioner told Matthew that he was sorry he did it. Tanisha peeked around the house, and Petitioner told her that he should shoot her too.  They pointed their guns at each other, but neither fired, and Petitioner got back in his car and drove away.

Darmekus told Petitioner that he was wrong for what he did.  Petitioner told him to shut up because he was "gone."  Petitioner dropped off Darmekus and returned to Sarah Baker's house.  Neighbor Donald Brown stopped to say hello to Petitioner when he saw him sitting in the Baker yard.  Petitioner asked Brown if Melanie was dead, but Brown had no idea what he was talking about and asked if she had been a wreck.  Petitioner said "No, I shot her."  Petitioner told Brown that he loved Melanie and she "was messing over him" and "playing on him" even though he was giving her all his money.  Petitioner said he had caught other men bringing her home.  He started crying and said he was sorry.

Sarah Baker testified that Petitioner would live at her home until he got paid from his job on an oil rig, go home to Melanie for a while, and Melanie would eventually throw him out.  Ms. Baker testified that when Petitioner returned home that day he sat down in a chair in the yard and told her to call 911.  When she asked why, he said, "She's dead."  Baker asked who, and Petitioner said it was Melanie.  Ms. Baker called 911, and Petitioner was taken into custody without incident.  Ms. Baker testified that she did not know Paul Kingsby, the owner of the Mustang, but had heard of him.  She was asked if Petitioner had spoken to her about Kingsby.  She replied that Petitioner told her more than once that Kingsby had threatened to kill Petitioner.

The jury was charged with the elements of both second degree murder and the lesser offense of manslaughter.  Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.  La. R.S. 14:30.1.  Manslaughter is a homicide that would be first or second degree murder, but the offense is

committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31. The jury returned a verdict of guilty of second degree murder.

Petitioner challenged the sufficiency of the evidence on direct appeal. In evaluating the challenge "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

The state appellate court reviewed the evidence in detail, set forth the Jackson standard, and discussed whether any rational juror could have found the essential elements of second degree murder. The court noted the only evidence to support the contention that Kingsby was Petitioner's enemy was scant, and it observed that no reasonable person would fly into a sudden murderous rage simply upon seeing his estranged wife driving another man's car. Petitioner's statements before shooting Melanie also strongly suggested that the killing was something he had thought about and even threatened Melanie with before. Tr. 781-89.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

The state court's adjudication of the Jackson claim was entirely reasonable based on the record. Petitioner argues that firing his gun after seeing Tanisha grab a gun undermines specific intent, but there was no evidence that Petitioner saw Tanisha with the gun until after he shot Melanie. There is also no evidence to support Petitioner's claim in his brief that Melanie had shot at him on another occasion. The state court's decision, viewed in light of the evidence actually submitted at trial is not subject to reversal on habeas review.

**Free Trial Transcript**

Petitioner had appointed counsel who filed his direct appeal. Petitioner later filed a pro se post-conviction application (Tr. 1165) in which he complained that (1) he had not been given a transcript of his trial and (2) his trial counsel was ineffective for (a) making a concession during closing argument and (b) not presenting the jury with evidence that Tanisha Baker grabbed a gun (which Petitioner suggests somehow supports self-defense).

The State filed a response (Tr. 1183) in which it represented that appellate counsel had full benefit of the record. The State also argued that the ineffective assistance claims were meritless because (a) counsel's manslaughter argument never conceded guilt of second

degree murder and (b) Tanisha had testified at trial about her possession of a gun.  The record contains a letter from appellate counsel, who informed Petitioner that he used a transcript from the appellate court to prepare the appeal but returned the transcript to that court afterward.  He had checked with the trial attorney, who also did not have a copy.  Tr. 1199.

The trial court denied relief in a simple order that stated the court agreed with the State's arguments.  Tr. 1189.  The state appellate court denied a writ application because Petitioner had not made a showing of particularized need for the transcript by properly filing an application for post-conviction relief that set out specific claims of constitutional errors that required the transcript for support.  Tr. 1212.  The appellate court issued a second order that reached the same result.  Tr. 1216.  The Supreme Court of Louisiana denied writs.  Tr. 1219.

Petitioner argues that the lack of a free transcript denied him his right to an effective appeal and post-conviction remedies.  On direct appeal, a defendant has a right to a trial transcript or a functional equivalent.  Griffin v. Illinois, 76 S.Ct. 585 (1956).  However, a post-appeal indigent defendant is not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim.  Smith v. Beto, 472 F.2d 164 (5th Cir. 1973).  The petitioner in Smith made a similar demand that he be provided a free transcript so that he could pursue post-conviction remedies, including a claim of ineffective assistance of counsel.  The Court observed that the petitioner was provided a free trial transcript for his original appeal, that appellate counsel had access to the trial transcript, and the petitioner did not need a transcript

to establish his ineffective assistance claim.  Habeas relief was denied.  A similar claim was rejected in Yates v. Collins, 988 F.2d 1210 (5th Cir. 1993) (unpublished).

Petitioner outlined claims of ineffective assistance in his post-conviction application, but he did not show that a transcript was necessary to support them.  This court has the transcript and can see that the claims are actually undermined by it.  There is no basis for the contention that Tanisha grabbed the gun within view of Petitioner or in any way posed a sort of risk on which counsel could have mounted a reasonable case for self-defense to justify killing Melanie.  As for concession by counsel, he did begin his closing by saying he would be a fool, in light of the evidence, to argue Petitioner did not shoot Melanie. But he then proceeded to argue that Petitioner lacked specific intent to support a murder conviction.  Tr. 691-92.

Petitioner has not shown how the lack of a transcript impeded his ability to pursue any colorable post-conviction claims. Moreover, Petitioner has not demonstrated that the state court's adjudication of this issue was an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d). To the extent Petitioner argues the state courts ran afoul of Louisiana law, errors in state post-conviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999). Habeas relief is not available with respect to the transcript issue.

**Ineffective Assistance**

Petitioner's federal petition makes conclusory assertions that trial counsel did not conduct a diligent investigation, did not discuss the particulars of the case with Petitioner at

length, and did not subpoena potential witnesses who could have offered favorable testimony.  Petitioner does not, however, identify any such witnesses other than Ms. Sarah Baker.  He contends that Baker could have testified that the car Melanie was driving belonged to Paul Kingsby, who had problems with Petitioner in the past.  Counsel did call Ms. Baker to testify, and she offered the kind of testimony Petitioner describes.  Petitioner also faults counsel for not objecting to the admissibility of the State's key witness's testimony, but he does not articulate the basis for such an objection or even identify which witness he references.

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme

malfunctions" in the state criminal justice system.  Harrington v. Richter, 131 S.Ct. 770, 786 (2011).

Petitioner's claims of ineffective assistance were either generic and conclusory or unsupported by the record.  Petitioner complained of lack of investigation or subpoenaing witnesses, but he never suggested what additional investigation might have yielded or identified witnesses who could have supported the defense.  To support a Strickland claim based on an uncalled witness, the petitioner must show that the testimony would have been favorable and that the witness would have testified at trial.  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000).  The one witness identified by Petitioner, Ms. Baker, did testify.  The state court's adjudication of this final claim was entirely reasonable.

Accordingly,

**IT IS RECOMMENDED** that the petition for habeas corpus be **denied** and **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of February, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE